IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JOSHUA TERRELL LOCKETT,

    Petitioner,

v.

                                        Civil Action No. 3:18CV325

HAROLD CLARK,

    Respondent.

## MEMORANDUM OPINION

Joshua Terrell Lockett, a Virginia state prisoner proceeding *pro se*, brings this petition pursuant to 28 U.S.C. § 2254 ("§ 2254 Petition," ECF No. 1), challenging his convictions in the Circuit Court for the City of Petersburg ("Circuit Court"). Following a jury trial in the Circuit Court, Lockett was convicted of second-degree murder, use of a firearm to commit second-degree murder, and manufacture of a controlled substance. In his § 2254 Petition, Lockett asserts:[1]

| | |
|---|---|
| Claim One: | "Lockett was denied his right to effective assistance of counsel under the Sixth Amendment ... when trial counsel [Susan Allen, Esq.,] failed to request a jury instruction on the lesser included offense of voluntary manslaughter." (§ 2254 Pet. 6.) |
| Claim Two: | "Lockett was denied his right to effective assistance of counsel under the Sixth Amendment ... when counsel [Walter Harris, Esq.,] failed to communicate a plea agreement to Mr. Lockett being offered to him by the Commonwealth." (*Id.* at 11.) |

By Memorandum Opinion and Order entered on March 11, 2019, the Court denied Respondent's Motion to Dismiss without prejudice. (ECF Nos. 13, 14.) Thereafter, Respondent filed a Supplemental Response. (ECF No. 20.) Respondent attached to his Supplemental

---

[1] The Court corrects the spelling, punctuation, and capitalization in the quotations from Lockett's submissions. The Court employs the pagination assigned to the parties' submissions by the CM/ECF docketing system.

Response the affidavit of Walter B. Harris (ECF No. 20–1) and the affidavit of Joanne M. Pena (ECF No. 20–2). By Memorandum Order entered on October 2, 2019, the Court informed Lockett that the Court intended to rely upon the foregoing submissions in resolving the § 2254 Petition and would treat Respondent's submissions as a motion for summary judgment under Fed. R. Civ. P. 56. (ECF No. 27.) Accordingly, the Court granted Lockett twenty (20) days from the date of entry thereof to submit any appropriate submissions in opposition to the Motion for Summary Judgment. Lockett has not responded.

## I. Procedural History

After his jury trial, the Circuit Court sentenced Lockett to thirty-three years and one month of imprisonment. (ECF No. 10–2, at 2.) Lockett appealed, challenging *inter alia*, the sufficiency of the evidence with respect to his conviction for second-degree murder. (ECF No. 10–3, at 3.) In rejecting that challenge, the Court of Appeals of Virginia summarized the evidence as follows:

> Appellant admitted he shot and killed the victim. At trial, he testified that he did not see the victim holding a gun, but he stated "it appeared to me that [the victim] was maybe brandishing a weapon" at the time appellant shot him. After the shooting, appellant fled the scene. Appellant also admitted he told numerous lies to the police in his statement.
> Other witnesses testified they did not see the victim in possession of a firearm on the night of the shooting. In addition, prior to the shooting, appellant and the victim had an encounter during which the victim saw appellant talking to the victim's girlfriend, Indya Greene. Sharasha Branch testified the victim asked Greene why she was talking to appellant, then he left in a car. Branch testified appellant said he did not like the way the victim looked at him. Philicia Chambliss testified appellant said if the victim looked at him like that again, appellant would "lay him down," and "he won't get back up." Chambliss also testified appellant said, "I'm going to bust a cap in his ass," referring to the victim. Another witness testified appellant said he "was going to put a bullet in [the victim], and he won't get back up." After making these remarks, on that same evening, appellant shot the victim twice with one bullet striking the victim in the chest.

(*Id.* at 4 (alterations in original).) Thereafter, the Supreme Court of Virginia refused Lockett's petition for appeal. (ECF No. 10–4.)

2

On September 1, 2016, Lockett filed a petition for a writ of habeas corpus in the Circuit Court, wherein he raised Claim One of the present § 2254 Petition. (ECF No. 10–7, at 2.) On or about December 12, 2016, Respondent filed a Motion to Dismiss the state habeas petition (ECF No. 10–6, at 1) and attached to the Motion to Dismiss an affidavit from Susan E. Allen, Esq., who represented Lockett at trial. (*Id.* at 19–26.) In that affidavit, Ms. Allen noted that Walter Harris, Esq., with the Petersburg Public Defender's Office had previously represented Lockett on the instant criminal charges. (*Id.* at 25.) Ms. Allen represented that Mr. Harris informed her that Lockett previously rejected a plea offer from the prosecution for "a plea for 20 years." (*Id.*) This information provides the basis for Claim Two in the present § 2254 Petition.

On January 5, 2017, the Circuit Court denied the state petition for a writ of habeas corpus. (ECF No. 10–7, at 9.) Lockett appealed. (ECF No. 10–8.) On February 26, 2018, the Supreme Court of Virginia refused the petition for appeal in a summary order. (ECF No. 10–9.)

## II. Claim One – Failure to Request an Instruction for Voluntary Manslaughter

To demonstrate ineffective assistance of counsel, a convicted defendant must show, first, that counsel's representation was deficient, and second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective

assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

Here, in Claim One, Lockett faults trial counsel for failing to proffer a jury instruction for voluntary manslaughter. In Virginia, "[v]oluntary manslaughter is defined as an intentional killing committed while in the sudden heat of passion upon reasonable provocation." *Turner v. Commonwealth*, 476 S.E.2d 504, 506 (Va. Ct. App. 1996) (citation omitted), *aff'd*, 492 S.E.2d 447 (Va. 1997). The Supreme Court of Virginia has observed that:

> [i]n a given situation, the accused, without producing evidence, may be entitled to an instruction on manslaughter, or even to a verdict on that lesser charge, if it can reasonably be inferred from the Commonwealth's evidence that he acted in the heat of passion. Where the Commonwealth's evidence does not permit such an inference, however, the burden of production shifts to the accused. But when he produces some credible evidence that he acted in the heat of passion, he is entitled to an instruction on manslaughter and also, if the evidence as a whole raises a reasonable doubt that he acted maliciously, to a verdict on the lesser charge of homicide.

*Lee v. Clarke*, 781 F.3d 114, 123 (4th Cir. 2015) (quoting *Hodge v. Commonwealth*, 228 S.E.2d 692, 697 (Va. 1976)). As explained below, given the abundant evidence of Lockett's premeditation and the negligible evidence suggesting Lockett acted in the heat of passion upon reasonable provocation, even if the jury received an instruction on voluntary manslaughter, the jury still would have convicted Lockett of second-degree murder.

On the night of August 12, 2013, Philicia Chambliss was hanging out with her juvenile friends Sharasha and Indya. (Tr. 81–82.)[2] They went to Croatan apartments, where Indya started talking to Lockett. (Tr. 86–87.) Rakeem and Marquis Harmon showed up in their Cadillac. (Tr. 83, 88.) Indya and Marquis were dating at this time. (Tr. 112.) Marquis asked Indya to speak

---

[2] All transcript citations come from the August 13 and 14, 2014 Trial Transcript.

4

with him, and she reluctantly left Lockett's side to speak with Marquis. (Tr. 89.) Marquis gave Lockett a look. (Tr. 89.) Shortly thereafter, Rakeem and Marquis drove off. (Tr. 90.)

After Marquis drove off, Lockett was with Indya and said, "why that nigger looking at me? If he look at me like that again, I'm going to, you know, lay him down. He won't get back up." (Tr. 91.) Lockett was angry. (Tr. 136.) Indya and her friends along with Lockett and some of his friends walked over to the rec center at the Pin Oaks development. (Tr. 91–92.)

When they got to the rec center, Lockett pulled out his gun and began showing Indya how to shoot someone. (Tr. 92–93.) Shortly thereafter, Lockett saw Marquis drive by in his Cadillac. (Tr. 93.) Lockett then stated he was going to shoot Marquis. (Tr. 93–94.) Specifically, he stated, "I'm going to bust a cap in his ass." (Tr. 93.) Lockett's companion, Black,[3] told Lockett to hide in the bushes so Lockett could shoot Marquis. (Tr. 332.) Lockett then hid in the bushes. (Tr. 332–33.) Indya told Lockett not to shoot Marquis and then ran to warn Marquis to stay in the car. (Tr. 333.)

Before Indya could warn him, (Tr. 334), Marquis stopped his car and got out. (Tr. 99.) Lockett then shot Marquis from 10 to 12 feet away. (Tr. 102.) At the time he was shot, Marquis did not have anything in his hands. (Tr. 104.) All of the pertinent witnesses testified that they never saw Marquis with a gun that evening. Multiple prosecution witnesses testified that Lockett expressed his intent to kill Marquis before Marquis appeared at Twin Oaks and that Lockett lied in wait behind the bushes after Marquis did appear at Twin Oaks.

The police apprehended Lockett the following morning. (Tr. 213–15.) The gun was lying next to Lockett on the bed. (Tr. 217.) On the way to the magistrate's office, Lockett told Detective Ewers, "I am going away forever. It was an accident, and nobody wants to hear it." (Tr. 377.)

---

[3] Black's real name is Meshawn Crocker. (Tr. 68.)

5

Lockett testified that he was talking to Indya behind the rec center when the Cadillac pulled up. (Tr. 396–401.) Indya and her friends went to Marquis's car. (Tr. 400–01.) When Lockett realized that Indya and her friends were not going to return anytime soon, Lockett and his friend Black decided to go back to Black's house. (Tr. 403.) Lockett then noticed a car slowly following them. (Tr. 403–04.) Lockett encountered Indya and began to talk to her again when he heard the car engine revving. (Tr. 405–06.) At that point, Lockett took off running. (Tr. 405–06.) Lockett encountered Marquis coming around the side of the building. (Tr. 409.) Lockett testified, "I'm not sure if he was putting something in his pocket, but it appeared to me that he was maybe brandishing a weapon. . . . As soon as I seen him hit the corner like that being at the spot that I was at, I immediately took up my firearm again and fired. Boom, boom." (Tr. 409–10.) Lockett then fled the scene. (Tr. 414.)

On cross-examination, Lockett acknowledged that, just before he shot Marquis, he hid behind a bush and had his gun out. (Tr. 423.) Lockett further acknowledged that he turned the safety off on his gun before he shot Marquis. (Tr. 425.) Lockett admitted that, during his two-hour police interview, he never mentioned anything about Marquis brandishing a firearm or reaching for a weapon. (Tr. 425–26.) Lockett also admitted that he had repeatedly lied during his police interview to avoid responsibility for the shooting. (Tr. 427, 433.) In short, Lockett's credibility was fairly well shredded upon cross-examination.

"Heat of passion requires the simultaneous 'reasonable provocation' by the victim and resulting passion by the defendant, such that the defendant acts 'on impulse without conscious reflection.'" *Williams v. Commonwealth*, 767 S.E.2d 252, 258 (Va. Ct. App. 2015) (quoting *Graham v. Commonwealth*, 525 S.E.2d 567, 571 (Va. Ct. App. 2000)). The overwhelming weight of the credible evidence reflects that Lockett's shooting of Marquis was not done "on impulse

6

without conscious reflection." *Graham*, 525 S.E.2d at 571 (citation omitted). Rather, that evidence reflected that Lockett felt slighted by Marquis and lay in wait to kill him. Moreover, there was no credible evidence to support the notion that Lockett acted upon reasonable provocation. *Jones v. Commonwealth*, 833 S.E.2d 918, 931 (Va. Ct. App. 2019) (concluding that "fear alone is insufficient to show heat of passion. As a matter of law, even if [the victim] had reached toward his waistband and threatened [the defendant], these circumstances would not amount to heat of passion or reasonable provocation."); *Canipe v. Commonwealth*, 491 S.E.2d 747, 754 (Va. Ct. App. 1997) (concluding no reasonable provocation existed where "the victim merely walked toward appellant after exiting his car. The victim did not display a weapon and, other than his large size and infuriated expression, did not appear threatening to appellant."). Accordingly, Lockett fails to demonstrate that he was prejudiced by counsel's failure to request an instruction on voluntary manslaughter. Claim One will be DISMISSED.

### III. Claim Two – Alleged Failure to Convey a Plea Offer

Respondent initially responds that Claim Two is unexhausted and procedurally defaulted. While that may be the case, as explained below, at this stage, Lockett has demonstrated cause and prejudice to excuse his default. Because it is necessary to examine whether Lockett's claim is "substantial" to resolve whether he can satisfy the cause and prejudice standard, the Court first recites the evidence the parties provided with respect to Claim Two. *See Fowler v. Joyner*, 753 F.3d 446, 461 (4th Cir. 2014) (citation omitted).

## A. The Plea Negotiations

### 1. Respondent's Version of Events

Respondent has obtained affidavits from Lockett's pretrial counsel, Walter B. Harris (ECF No. 20–1) and Joanne M. Pena, an investigator with the Office of the Public Defender for the City of Petersburg, Virginia, for the past 15 years, (ECF No. 20–2 ¶ 1).

Mr. Harris swears that he discussed with Lockett the evidence arrayed against him and the pros and cons of a jury trial. (ECF No 20–1 ¶ 8.) Mr. Harris asked Lockett whether he "could approach the Commonwealth's Attorney, Kenneth Blalock, to negotiate a plea on [Lockett's] behalf." (*Id.*) Mr. Harris then initiated plea negotiations. (*Id.* ¶ 9.) Eventually, on March 14, 2014, the date set for Lockett's jury trial, (*id.* ¶ 7), while Lockett was confined in the holding cell at the Circuit Court, Mr. Harris conveyed to Lockett that if he agreed to plead to a lesser charge, the Commonwealth would agree to a sentence of twenty-two years. (*Id.* ¶ 10.) "Mr. Lockett made a counter offer of twenty years to serve in jail on the agreed lesser charge." (*Id.*) "The Commonwealth['s] Attorney acquiesced to Mr. Lockett's count[er] offer." (*Id.* ¶ 11.) When Mr. Harris informed Lockett that the Commonwealth's Attorney had agreed to his counter offer, "Mr. Lockett then stated that the Commonwealth's case must be weak, rejected the agreed upon offer, and said he wanted a jury trial." (*Id.* ¶ 13.)

"Almost immediately thereafter, Mr. Lockett's case was called to bar." (*Id.* ¶ 14.) Mr. Harris asked for a continuance until March 20, 2014. (*Id.* ¶ 15.) Up until March 20, 2014, and thereafter, Mr. Harris "begged Mr. Lockett to reconsider the offer and reminded him of the evidence against him." (*Id.* ¶ 16.) Lockett requested that Mr. Harris petition the Circuit Court to appoint him a new attorney, which Mr. Harris did. (*Id.* ¶ 17.) On April 17, 2014, the Circuit Court appointed new counsel to represent Lockett. (*Id.*)

"Mr. Lockett's case file was closed and later archived in May 2018 at the Library of Virginia. The Library's archivists have been unable to locate Mr. Lockett's file after diligently searching for it." (*Id.* ¶ 18.) Mr. Harris does not possess any documents pertaining to Lockett's case. (*Id.*)

Ms. Pena, who was present during the plea negotiations in the holding cell at the Circuit Court, (*id.* ¶ 12; ECF No. 20-2 ¶ 2), corroborates Mr. Harris's version of events. (ECF No. 20-2 ¶¶ 2–5.)

### 2. Lockett's Version of Events

Lockett swears,

> Mr. Harris certainly *did not* present Mr. Lockett with a plea offer for 20 years. Mr. Lockett was never made aware, at any time throughout Mr. Harris's time representing him of a 20-year plea agreement being offered to him. . . .
> Furthermore, had Mr. Harris properly communicated this plea agreement to Mr. Lockett, Mr. Lockett would have accepted the plea and therefore never [would] have gone to trial and end[ed] up with 33 years. This omission by Walter Harris was extremely prejudicial to Mr. Lockett.
> . . . [H]ad Mr. Lockett been given the opportunity to accept the plea for 20 years he would have done so and therefore never [would] have gone to trial to ultimately be sentenced to 33 years.

(ECF No. 1, at 11–12.)

### B. Exhaustion and Procedural Default

Before a state prisoner can bring a § 2254 petition in federal district court, the prisoner must first have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). State exhaustion "is rooted in considerations of federal-state comity," and in Congressional determination via federal habeas laws "that exhaustion of adequate state remedies will 'best serve the policies of federalism.'" *Slavek v. Hinkle*, 359 F. Supp. 2d 473, 479 (E.D. Va. 2005) (some internal quotation marks omitted) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 491–92, 492 n.10 (1973)). The purpose of exhaustion is "to give the State an initial opportunity

to pass upon and correct alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal quotation marks omitted). Exhaustion has two aspects. First, a petitioner must utilize all available state remedies before the petitioner can apply for federal habeas relief. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844–48 (1999). As to whether a petitioner has used all available state remedies, the statute notes that a habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

The second aspect of exhaustion requires a petitioner to have offered the state courts an adequate "opportunity" to address the constitutional claims advanced on federal habeas. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (internal quotation marks omitted) (quoting *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995)). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Id.* Fair presentation demands that a petitioner present "both the operative facts and the controlling legal principles" to the state court. *Longworth v. Ozmint*, 377 F.3d 437, 448 (4th Cir. 2004) (internal quotation marks omitted) (quoting *Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir. 2000)). The burden of proving that a claim has been exhausted in accordance with a "state's chosen procedural scheme" lies with the petitioner. *Mallory v. Smith*, 27 F.3d 991, 994–95 (4th Cir. 1994).

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). This doctrine provides that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Id.* (citing

*Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991)). A federal habeas petitioner also procedurally defaults claims when he or she "fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Id.* (quoting *Coleman*, 501 U.S. at 735 n.1).[4] The burden of pleading and proving that a claim is procedurally defaulted rests with the state. *Jones v. Sussex I State Prison*, 591 F.3d 707, 716 (4th Cir. 2010) (citations omitted). Absent a showing of "cause for the default and actual prejudice as a result of the alleged violation of federal law," or a showing that "failure to consider the claims will result in a fundamental miscarriage of justice," this Court cannot review the merits of a defaulted claim. *Coleman*, 501 U.S. at 750; *see Harris v. Reed*, 489 U.S. 255, 262 (1989).

To exhaust Claim Two, Lockett was required to raise it before the Supreme Court of Virginia. He has not done so. If Lockett now attempted to raise Claim Two in the Supreme Court of Virginia in a habeas petition, that habeas petition would be barred as untimely pursuant to section 8.01–654(A)(2) of the Virginia Code.[5] Virginia's statute of limitations for habeas actions is an adequate and independent procedural rule when so applied. *Sparrow v. Dir., Dep't of Corr.*, 439 F. Supp. 2d 584, 587–88 (E.D. Va. 2006). Thus, Lockett has procedurally defaulted Claim

---

[4] Under these circumstances, even though the claim has not been fairly presented to the Supreme Court of Virginia, the exhaustion requirement is "technically met." *Hedrick v. True*, 443 F.3d 342, 364 (4th Cir. 2006) (citing *Gray v. Netherland*, 518 U.S. 152, 161–62 (1996)).

[5] This statute provides:

> A habeas corpus petition attacking a criminal conviction or sentence . . . shall be filed within two years from the date of final judgment in the trial court or within one year from either final disposition of the direct appeal in state court or the time for filing such appeal has expired, whichever is later.

Va. Code Ann. § 8.01–654(A)(2) (West 2019).

Two. Nevertheless, as explained below, Lockett plausibly has demonstrated cause and prejudice to excuse his default.

C. Cause and Prejudice Excusing the Default

In *Coleman v. Thompson*, 501 U.S. 722 (1991), the Supreme Court "held that attorney error committed in the course of state postconviction proceedings—for which the Constitution does not guarantee the right to counsel—cannot supply cause to excuse a procedural default that occurs in those proceedings." *Davila v. Davis*, 137 S. Ct. 2058, 2065 (2017) (internal citation omitted) (citing *Coleman*, 501 U.S. at 755). In *Martinez v. Ryan*, 566 U.S. 1 (2012), the Supreme Court announced a "'equitable . . . qualification' of the rule in *Coleman* that applies where state law requires prisoners to raise claims of ineffective assistance of trial counsel 'in an initial-review collateral proceeding,' rather than on direct appeal." *Davila*, 137 S. Ct. at 2065 (quoting *Martinez*, 566 U.S. at 16, 17). Specifically, the Court held that in such situations, "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if the default results from the ineffective assistance of the prisoner's counsel in the collateral proceeding." *Id.* (quoting *Martinez*, 566 U.S. at 17).

After *Martinez*, a federal habeas petitioner who seeks to raise an otherwise procedurally defaulted claim of ineffective-assistance-of-trial-counsel,

> may do so only if: (1) the ineffective-assistance-of-trial-counsel claim is a substantial one; (2) the "cause" for default "consist[s] of there being no counsel or only ineffective counsel during the state collateral review proceeding"; (3) "the state collateral review proceeding was the initial review proceeding in respect to the ineffective-assistance-of-trial-counsel claim"; and (4) state law "requires that an ineffective-assistance-of-trial-counsel claim be raised in an initial-review collateral proceeding."

*Fowler v. Joyner*, 753 F.3d 446, 461 (4th Cir. 2014) (quoting *Trevino v. Thaler*, 569 U.S. 413, 423 (2013)). Here, the third and fourth elements are easily satisfied "because Virginia requires

12

ineffective-assistance-of-counsel claims to be raised only in an initial-review collateral proceeding." *Juniper v. Zook*, 117 F. Supp. 3d 780, 789 (E.D. Va. 2015) (citing *Lenz v. Commonwealth*, 544 S.E.2d 299, 304 (Va. 2001)). Furthermore, Respondent concedes that Lockett has satisfied the second element as Lockett was not appointed counsel during his state habeas proceedings. (ECF No. 20 ¶ 19 (citation omitted).) Respondent, however, disputes that Lockett has satisfied the first element. (*Id.* ¶ 20.)

With respect to the first element, a petitioner must "demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Martinez*, 566 U.S. at 14 (citing *Miller-El v. Cockrell*, 537 U.S. 322 (2003)). "The Supreme Court indicated that the 'some merit' threshold bore some relation to the standards for issuing a certificate of appealability ('COA')." *Juniper*, 117 F. Supp. 3d at 789 (citation omitted). Thus, the standard for issuing a COA is instructive in what a petitioner must demonstrate in order to satisfy the first element of *Martinez*. In this regard, the Supreme Court has explained that the standard for obtaining a COA is not overly exacting:

> [A] petitioner must sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. . . .
> . . . .
> . . . . We do not require petitioner to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus. Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail.

*Miller-El*, 537 U.S. at 336, 338 (second alteration in original) (internal quotation marks omitted).

At this stage, under the first element, the Court has little difficultly concluding that Claim Two has "some merit." *Martinez*, 566 U.S. at 14 (citation omitted). First, Lockett has presented evidence that trial counsel performed deficiently by failing to inform him of a favorable plea offer.

13

*United States v. Brannon*, 48 F. App'x 51, 53 (4th Cir. 2002) (observing that "the [complete] failure of a defense attorney to timely inform his client of a plea offer constitutes unreasonable professional assistance" (citing *United States v. Blaylock*, 20 F.3d 1458, 1465–66 (9th Cir. 1994))). Second, with respect to prejudice, Lockett has presented some evidence that he would have taken the plea offer if properly advised by counsel.

Respondent contends that given the quality of the competing affidavits, the Court is free to make credibility determinations. (ECF No. 20 ¶ 41 (citing *Strong v. Johnson*, 495 F.3d 134, 139 (4th Cir. 2007).) Although improbable, Lockett's sworn version of events is not so vague or incredible that it can be rejected outright at this stage. *See United States v. King*, 679 F. App'x 297, 299 (4th Cir. 2017) (observing that "while counsel's statements are more detailed and more fully supported by documentary evidence, we cannot conclude that the [petitioner's] contrary affidavits are so conclusory or so implausible as to warrant their outright rejection, or to otherwise dispel the material factual disputes at issue in their case"); *Belmar v. Clarke*, No. 3:16CV455, 2018 WL 1568680, at *8–11 (E.D. Va. Mar. 30, 2018) (concluding that trial counsel's multiple assertions that he conveyed plea offer to the petitioner were not credible and granting habeas relief).

Finally, Respondent contends that Lockett has failed to make a complete showing of prejudice because he fails to demonstrate that "if the prosecution had the discretion to cancel it or if the trial court had the discretion to refuse to accept it, there is a reasonable probability neither the prosecution nor the trial court would have prevented the offer from being accepted or implemented." *Missouri v. Frye*, 566 U.S. 134, 148 (2012). Respondent suggests that the Circuit Court would have been unwilling to accept a plea that capped Lockett's sentence at twenty years given the Circuit Court's comments at sentencing and its decision to impose the thirty-three-year

sentence recommended by the jury. Nevertheless, one would assume that the prosecution generally would not propose a plea offer that it believed the Circuit Court was likely to reject. Further, the plea offer here, which capped Lockett's sentence at 20 years, was not particularly outlandish. According to the record, Virginia's discretionary sentencing guidelines suggested a sentence of roughly that length. (Oct. 29, 2014 Tr. 4.) At this stage, Lockett has demonstrated a reasonable probability that the Circuit Court would not have rejected the plea. *See, e.g., United States v. Ray*, 547 F. App'x 343, 345 (4th Cir. 2013) (concluding upon sparse evidence that petitioner "made a colorable showing that . . . he would have accepted a plea that would have been accepted by the court"); *United States v. Dickerson*, 546 F. App'x 211, 214 (4th Cir. 2013).

At this juncture, material facts remain in dispute regarding the performance of trial counsel and whether Lockett can demonstrate prejudice from any omissions of trial counsel or the lack of habeas counsel. *Juniper*, 117 F. Supp. 3d 790 (observing that "the *Martinez* exception to the procedural-default bar includes within it consideration of the merits of the procedurally defaulted claim"). Under such circumstances, Lockett should "be afforded an evidentiary hearing to develop a proper factual record." *Hill v. Glebe*, 654 F. App'x 294, 295 (9th Cir. 2016) (citing *Detrich v. Ryan*, 740 F.3d 1237, 1246–48 (9th Cir. 2013)). This is so because "an evidentiary hearing is required when a movant presents a colorable Sixth Amendment claim relying upon disputed facts beyond the record or when a credibility determination is needed to resolve the issue." *United States v. Woodard*, 748 F. App'x 498, 499 (4th Cir. 2018) (citing *United States v. Witherspoon*, 231 F.3d 923, 926–27 (4th Cir. 2000); *United States v. White*, 366 F.3d 291, 297 (4th Cir. 2004)). Claim Two will be REFERRED for an evidentiary hearing.

## IV. Conclusion

Claim One will be DISMISSED. Respondent's request to dismiss Claim Two will be DENIED. Counsel will be APPOINTED to represent Lockett with respect to Claim Two. Claim Two will be REFERRED to the Honorable Roderick C. Young, United States Magistrate Judge, for an evidentiary hearing.

An appropriate Order shall issue.

Date: 10 January 2020
Richmond, Virginia

/s/ John A. Gibney, Jr.
United States District Judge